IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

BRENDA PREE                                                                                          PLAINTIFF

V.                                                          CIVIL ACTION NO. 4:16-CV-122-SA-RP

THE WASHINGTON COUNTY
BOARD OF SUPERVISORS,
JESSE AMOS,
PAUL WATSON, JR., and
MIKE GORDON                                                                                         DEFENDANTS

MEMORANDUM OPINION

Brenda Pree originally filed this case in the Circuit Court of Washington County, Mississippi. The Defendants removed the case to this Court on June 15, 2016. In her Amended Complaint [4-7], Pree alleges various claims against the Washington County Board of Supervisors, as well as claims against County Supervisors Jesse Amos, Paul Watson Jr., and Mike Gordon in their official and individual capacities. The Defendants filed two motions requesting dismissal of particular claims [10, 12], and one asserting qualified immunity on behalf of the individual defendants [8]. With the relevant responses, replies, and deadlines complete, these motions are ripe for review.

*Factual and Procedural Background*

After the resignation of the Washington County Planning Director/Grant Writer, and the multiple hospitalizations of the County Administrator in 2014, the County Board of Supervisors recognized the need for additional personnel both to supplement or substitute for the current County Administrator, and to do grant writing and administration. On November 4, 2014, the Board of Supervisors authorized a call for applications for the position of Assistant County Administrator/Human Resources Director. Subsequently, the Board approved Vicki Uppal to

serve temporarily as a grant writer and administrator for the County for a period of three months. The Chancery Clerk issued an official Notice of Intent and subsequently published an advertisement for the Assistant County Administrator position. On December 1, 2014, the Board approved a salary for the position, and reviewed and added duties, including grant writing, to the proposed job description. At that time, the Board also changed the job title to Assistant County Administrator/Grants Coordinator.

By the deadline of December 12, 2014 the County received some thirty-six applications. In February of 2015, four out of five of the Supervisors submitted their top choices from the pool of applicants.[1] From these choices the Board selected four top candidates for interviews. Both Uppal and the Plaintiff were on the list of top candidates. After completing interviews, the Board voted unanimously to appoint Uppal as Assistant County Administrator/Grants Coordinator. The County Administrator continued to have health issues and eventually resigned effective June 30, 2015. On July 20, 2015 the Board appointed Uppal as County Administrator. The Board did not advertise or consider other applicants for County Administrator.

According to the Plaintiff, several members of the Board conspired to manipulate the application and appointment process for the County Administrator position. According to the Plaintiff, the Board wanted a white person in the position instead of the Plaintiff, who is African-American, even though the Plaintiff was more qualified. The Plaintiff alleges that the Board appointed Uppal to the temporary grant writing position even though she had no experience. Then, the Plaintiff alleges, the Board members added grant writing qualifications to the Assistant County Administrator job description to make Uppal appear more qualified.

The Defendants filed a motion to dismiss the Plaintiff's Title VII claims against the

---

[1] The Supervisor from District 3 did not submit a list of his top choices, but the other four Supervisors did.

individual Defendants [10]. In her Response [18], the Plaintiff states that she did not intend to assert Title VII claims against the individual defendants. Instead, the Plaintiff indicates that she is pursuing a Title VII claim against the County only. For this reason, the Defendants' motion is well taken and the Plaintiff's Title VII claims against the individual Defendants are dismissed with prejudice.

The Defendants also filed a Motion to dismiss [12] the Plaintiff's state law claim for defamation. The Defendants argue, *inter alia*, that the claim is barred under the prerequisites of the Mississippi Tort Claims Act, and that the Plaintiff failed to state a claim for defamation under Mississippi Law. In her response [19], the Plaintiff concedes that dismissal of this claim is appropriate. For this reason, the Defendants' motion to dismiss the Plaintiff's state law claim of defamation is granted, and her defamation claim is dismissed with prejudice.

Thus, the Plaintiff has three remaining claims against the County, one Title VII claim, one Equal Protection claim, and one due process claim based on the Mississippi Constitution.[2] As to the individual Defendants, the Plaintiff has an equal protection claim against each of them.[3]

The Defendants filed a Motion for Summary Judgment [8] invoking the protection of qualified immunity and requesting dismissal of all the Plaintiff's remaining claims against the individual Defendants. The individual Defendants argue that they are entitled to qualified

---

[2] Although the Plaintiff's Amended Complaint does not specifically state that her claim based on the Mississippi Constitution is alleged against the County only, the individual Defendants are not named in this "Count" nor are any specific actions of the individual Defendants alleged. For these reasons, the Court construes the Plaintiff's seventh claim as a claim against the County only or in the alternative against the County and the individual Defendants in their official capacities.

[3] Official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (citing *Monell v. New York City Dep't of Social Servc.,* 436 U.S. 658, 690, n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Id*. (citing *Brandon v. Holt*, 469 U.S. 464, 471, 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985)). Thus, the Plaintiff's official capacity claims are claims against Washington County and not against the individual Defendants.

immunity because they did not violate the Plaintiff's constitutional rights, and their conduct was objectively reasonable. The Plaintiff responds by arguing that the individual Defendants violated her constitutional right to equal protection when they "preselected" Uppal for the position because of her race, and that their actions exhibited "deliberate indifference" to the Plaintiff's clearly established rights.

*Qualified immunity*

Qualified immunity protects government officials from liability for civil damages to the extent that their conduct is objectively reasonable in light of clearly established law. *Crostley v. Lamar Cty., Texas*, 717 F.3d 410, 422-24 (5th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004)). "[T]he usual summary judgment burden of proof is altered in the case of a qualified immunity defense." *Wolfe v. Meziere*, 566 F. App'x 353, 354 (5th Cir. 2014) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001)). "An [official] need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the [official's] allegedly wrongful conduct violated clearly established law." *Id*. The Plaintiff "cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Id*.

"A plaintiff can overcome a qualified immunity defense by showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011); *Harlow v.*

4

*Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). The second prong is satisfied "only if 'the state of the law at the time of the incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional.'" *Kimbriel v. City of Greenville, Miss.*, No. 15-60489, 2016 WL 1719108, at *2 (5th Cir. Apr. 28, 2016) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016); *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1866 (2014)). The Court may conduct this two-pronged inquiry in any order. *Crostley*, 717 F.3d at 422-24 (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).

*Race Discrimination and Equal Protection*

The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV. To establish the requisite constitutional violation, and "to state a claim of racial discrimination under the Equal Protection Clause, the Plaintiff 'must allege and prove that she received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Gaalla v. Brown*, 460 F. App'x 469, 479 (5th Cir. 2012) (quoting *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004); *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (per curiam)).

At the outset, the Court notes that it is clearly established that the Equal Protection Clause of the Fourteenth Amendment prohibits intentional racial discrimination. *See Blackwell v. Laque*, 275 F. App'x 363, 367 (5th Cir. 2008); *see also Piatt v. City of Austin*, 378 F. App'x 466, 469 (5th Cir. 2010) (stating that "intent is relevant to the first prong [of the qualified immunity analysis] but not to the second prong because officials generally are precluded from proving that intentionally discriminatory conduct is objectively reasonable") (gathering cases). Thus, the Court's analysis of

5

whether the individual Defendants in this case are entitled to qualified immunity turns on whether the Plaintiff has established the requisite constitutional violation, specifically whether she has stated a claim for intentional race discrimination. *Gaalla*, 460 F. App'x at 479; *Priester*, 354 F.3d at 424; *Taylor*, 257 F.3d at 473. In the end, "proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citing *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)).

Because the "inquiry into intentional discrimination in public employment is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII," to succeed on a claim for intentional discrimination under Section 1983, Plaintiff must first prove a *prima facie* case of discrimination either through direct evidence of discriminatory motive, or circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973); *Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007); *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

Because the Plaintiff has not presented direct evidence of discrimination, the Court must analyze her claims utilizing the *McDonnell Douglas* burden-shifting framework. That framework requires that the Plaintiff establish that she (1) belongs to a protected class, (2) was qualified for the positions from which she was excluded, (3) was subject to an adverse employment action, and (4) was treated less favorably than similarly situated employees. *Gaalla*, 460 F. App'x at 480 (citing *Bryan v. McKinsey & Co., Inc.,* 375 F.3d 358, 360 (5th Cir. 2004). If the Plaintiff makes out a *prima facie* case, it raises the presumption of discrimination, and the burden shifts to the

employer to "articulat[e] a legitimate, nondiscriminatory reason for its actions." *Id.* (citing *Meinecke v. H & R Block of Hous.*, 66 F.3d 77, 83 (5th Cir. 1995) (per curiam)). If the employer articulates a reason, "the presumption disappears, and the Plaintiff must prove that the proffered reasons are a pretext for discrimination." *Id.*

*Discussion and Analysis*

Undisputed evidence in the record supports a conclusion that the Plaintiff has established a *prima facie* case of discrimination here. First, the Plaintiff is African-American and therefore a member of a protected class. Second, she was qualified for the position as she was one of the top four candidates out a field of thirty-six and was selected for an interview. Third, she was not hired for the position that she sought. Finally, a white person was hired instead.

In response to the presumption of discrimination raised by the Plaintiff's *prima facie* case, the individual Defendants assert that the Plaintiff was not hired because she was substantially less qualified than Uppal. Specifically, the individual Defendants assert that in addition to her undergraduate degree, Uppal had an advanced degree, a Masters in Business Administration from the University of Michigan, that particularly qualified her for the position. The Plaintiff does not possess any advanced degree. The individual Defendants also assert that the Plaintiff lied on her resume when she indicated that she was then currently employed as the City Clerk for the City of Jackson when she had in fact been terminated more than six months earlier.

Because the individual Defendants met their burden of producing a legitimate, non-discriminatory reason for their decision, the burden shifts back to the Plaintiff to demonstrate that this reason is mere pretext. *Gaalla*, 460 F. App'x at 480; *Meinecke*, 66 F.3d at 83. The Plaintiff failed to produce any evidence of pretext or discriminatory intent as required to substantiate her

7

claim. *See Arlington Heights*, 429 U.S. at 265, 97 S. Ct. 555; *Coleman*, 113 F.3d at 533.

Although the Plaintiff alleges that she was more qualified than Uppal, she offers no evidence to support this allegation, and no argument or evidence to rebut the individual Defendants' assertion that Uppal was the more qualified candidate. The Plaintiff also alleges that the individual Defendants demonstrated a pattern of invidious discrimination and that their actions were racially motivated, but again offers no evidence to support her allegation. In response, the individual Defendants point out that they personally voted to reappoint the Plaintiff when she was previously employed as the Justice Court Clerk for Washington County. Finally, the Plaintiff argues that the individual Defendants "preselected" Uppal because she is white, and that the preselection is evidence of pretext. The Plaintiff cites to *Rowe v. Jewell*, 88 F. Supp. 3d 647, 665 (E.D. La, 2015) in support of her argument. The Plaintiff's argument misses the mark, and is unsupported by facts or evidence. The *Rowe* Court held that the plaintiff in that case *failed* to demonstrate pretext through preselection because "pre-selection, in and of itself, does not establish pretext *unless the preselection was motivated by discriminatory animus*." *Rowe*, 88 F. Supp. 3d at 665 (citing *Walsdorf v. Bd. of Comm'rs for the E. Jefferson Levee Dist.*, 857 F.2d 1047, 1051 (5th Cir.1988); *Hiner v. McHugh*, 546 F. App'x 401, 407 (5th Cir. 2013)). As in *Rowe*, even if the Plaintiff could prove that Uppal was preselected, she has not produced any evidence of motive or discriminatory intent.

*Conclusion*

To avoid summary judgment, the nonmoving party must supply "evidence on which the jury could reasonably find for the plaintiff." *Chen v. Ochsner Clinic Found.*, 630 F. App'x 218, 222–23 (5th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505,

91 L. Ed. 2d 202 (1986)). Mere "conclusory allegations, speculation, [or] unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Id*. (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)).

Although the Plaintiff established a *prima facie* case of discrimination, she failed to bring forth any evidence that the individual Defendants' proffered reason for not hiring her was pretextual, and failed to bring forth any evidence of discriminatory motive or intent. *See Gaalla*, 460 F. App'x at 479; *Priester*, 354 F.3d at 424; *Taylor*, 257 F.3d at 473. For these reasons, the Plaintiff cannot establish the requisite constitutional violation, and is therefore unable to overcome the individual Defendants' assertion of qualified immunity. *See Ashcroft*, 563 U.S. at 735, 131 S. Ct. 2074; *Harlow*, 457 U.S. at 818, 102 S. Ct. 2727; *Allen*, 815 F.3d at 244.

The Court finds that the individual Defendants Amos, Watson, and Gordon are entitled to qualified immunity on all of the Plaintiff's claims. The Defendants' Motion for Summary Judgment [8] is GRANTED, and the Plaintiff's claims against the individual Defendants are DISMISSED with prejudice. As noted above, the Defendants' other motions to dismiss [10, 12] are also GRANTED, and the Plaintiff's Title VII claims against the individual Defendants, as well as the Plaintiff's state law claim for defamation are DISMISSED with prejudice.

The Plaintiff's three claims against the County, one Title VII claim, one Equal Protection claim, and one due process claim based on the Mississippi Constitution remain.

SO ORDERED, on this the 3rd day of February, 2017.

    /s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

9