IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

BRENDA PREE                                                                                          PLAINTIFF

V.                                                                        CIVIL ACTION NO. 4:16-CV-122-SA-RP

THE WASHINGTON COUNTY BOARD
OF SUPERVISORS, JESSE AMOS,
PAUL WATSON, JR., and MIKE GORDON                                                DEFENDANTS

MEMORANDUM OPINION

Brenda Pree originally filed this case in the Circuit Court of Washington County, Mississippi. The Defendants removed the case to this Court on June 15, 2016. In her Amended Complaint [4-7], Pree alleges various claims against the Washington County Board of Supervisors, as well as claims against County Supervisors Jesse Amos, Paul Watson Jr., and Mike Gordon in their official and individual capacities. Finding the individual defendants entitled to the protection of qualified immunity, the Court dismissed the Plaintiff's equal protection claim against them. *See* Order [34].[1] At this time, the Plaintiff has three remaining claims, all against the Board: one Title VII claim, one Equal Protection claim, and one due process claim based on the Mississippi Constitution. Now before the Court is the Board's Motion for Summary Judgment [45] requesting dismissal of all the Plaintiff's remaining claims. The issues are fully briefed and ripe for review. *See* Response [48]; Reply [51].[2]

---

[1] The Court also dismissed the Plaintiff's Title VII and defamation claims against the individual Defendants after the Plaintiff conceded these claims in her summary judgment briefing. *See* Order [34]; Memorandum Opinion [35].
[2] The Plaintiff filed an unsigned affidavit in support of her summary judgment response. *See* [48-1]. One week later, the Plaintiff filed a Motion to Amend [50], with a signed version of her affidavit attached, requesting permission from the Court to substitute the signed version for the unsigned one. The Board subsequently filed a Motion to Strike [52] the Plaintiff's unsigned affidavit from the record. The Court construes the Plaintiff's Motion to Amend [50] as an out-of-time motion for an extension of time, or in the alternative as a motion to supplement. The Court has broad discretion to manage motions deadlines and supplements under the Local Uniform Civil Rules and the Federal Rules of Civil Procedure. *See* L. U. CIV. R. 7, 15; FED. R. CIV. P. 6. The Board was fully aware of the issues raised here, had ample opportunity to respond, and is by no means prejudiced by the substitution of the signed version of the document. The

*Factual and Procedural Background*

The Washington County Planning Director/Grant Writer resigned in 2014, and the County Administrator was hospitalized multiple times for health issues during that same time. The County Board of Supervisors recognized the need for additional personnel to supplement and substitute for the current County Administrator, and to do grant writing and administration. On November 4, 2014, the Board of Supervisors authorized a call for applications for the position of Assistant County Administrator/Human Resources Director. Subsequently, the Board approved Vicki Uppal to serve temporarily as a volunteer grant writer/administrator for the County for a period of three months. The Chancery Clerk issued an official Notice of Intent and subsequently published an advertisement for the Assistant County Administrator position. On December 1, 2014, the Board approved a salary for the position, and reviewed and added duties, including grant writing, to the proposed job description. At that time, the Board also changed the job title to Assistant County Administrator/Grants Coordinator.

By the deadline of December 12, 2014, the Board received some thirty-six applications. In February of 2015, four out of five of the Supervisors submitted their top choices from the pool of applicants.[3] From these choices, the Board selected four top candidates for interviews. Both Uppal and the Plaintiff were on the list of top candidates. After completing interviews, the Board voted unanimously to appoint Uppal as Assistant County Administrator/Grants Coordinator. The County Administrator continued to have health issues and eventually resigned effective June 30, 2015. On July 20, 2015, the Board appointed Uppal as County Administrator. The Board did not advertise or consider other applicants for County Administrator.

---

Plaintiff's Motion to Amend [50] is granted, and the Board's Motion to Strike [52] is denied as moot. The Court considered the relevant, competent, admissible portions of the signed affidavit in its summary judgment analysis.
[3] The Supervisor from District 3 did not submit a list of his top choices, but the other four Supervisors did.

According to the Plaintiff, several members of the Board conspired to manipulate the application and appointment process for the County Administrator position. Also according to the Plaintiff, the Board wanted a white person in the position instead of the Plaintiff, who is African-American, even though the Plaintiff was more qualified. The Plaintiff alleges that the Board appointed Uppal to the temporary grant writing position even though she had no experience. Then, the Plaintiff alleges, the Board members added grant-writing qualifications to the Assistant County Administrator job description to make Uppal appear more qualified.

As noted above, the Plaintiff asserted three claims against the Board, one Title VII claim, one Equal Protection claim, and one due process claim based on the Mississippi Constitution. The Board filed a Motion for Summary Judgment [48] requesting dismissal of all the Plaintiff's remaining claims. The Board argues that the Plaintiff has not brought forth any evidence of discriminatory intent or motivation, and that it selected Uppal for the job simply because she was more qualified. The Plaintiff responds by arguing that she was substantially better qualified than Uppal, and that the Board pre-selected Uppal for the position because she is white.

*Standard of Review*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted).

This Court has no duty to "sift through the record in search of evidence to support" the nonmovant's opposition to summary judgment. *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

*Race Discrimination and Equal Protection*

The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV. "[T]o state a claim of racial discrimination under the Equal Protection Clause, the Plaintiff 'must allege and prove that she received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Gaalla v. Brown*, 460 F. App'x 469, 479 (5th Cir. 2012) (quoting *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004); *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (per curiam)). In the end, "proof of racially discriminatory intent or purpose is required to show a violation of the Equal

Protection Clause." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citing *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)).

The Court will analyze the Plaintiff's Equal Protection and Title VII claims together, because the "inquiry into intentional discrimination in public employment is essentially the same for individual actions brought under [42 U.S.C. §§] 1981 and 1983, and Title VII." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007); *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). To succeed on a claim for intentional discrimination under these statutory schemes, the Plaintiff must first prove a *prima facie* case of discrimination either through direct evidence of discriminatory motive, or circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817; *Lauderdale*, 512 F.3d at 166; *Wallace*, 80 F.3d at 1047.

Because the Plaintiff did not present direct evidence of discrimination, the Court will analyze her claims utilizing the *McDonnell Douglas* burden-shifting framework. That framework requires that the Plaintiff first establish a *prima facie* case by showing that she (1) is a member of a protected class; (2) was qualified and applied for the job; (3) the employer rejected her for the job despite her qualifications; and (4) a similarly situated applicant outside the protected class was hired. *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016), *reh'g denied* (Oct. 14, 2016), *cert. denied*, – U.S. –, 137 S. Ct. 1339, 197 L. Ed. 2d 529 (2017), *reh'g denied*, – U.S. –, 137 S. Ct. 2182, 198 L. Ed. 2d 248 (2017). If the Plaintiff makes out a *prima facie* case, it raises the presumption of discrimination, and the burden shifts to the employer to "articulat[e] a legitimate, nondiscriminatory reason for its actions." *Id*. (citing *Meinecke v. H & R Block of Hous.*,

66 F.3d 77, 83 (5th Cir. 1995) (per curiam)). If the employer articulates such a reason, "the presumption disappears, and the Plaintiff must prove that the proffered reasons are a pretext for discrimination." *Id*.

*Discussion and Analysis*

Undisputed evidence in the record supports a conclusion that the Plaintiff established a *prima facie* case of discrimination here. First, the Plaintiff is African-American and therefore a member of a protected class. Second, she was qualified for the position as she was one of the top four candidates out a field of thirty-six and the Board selected her for an interview. Third, the Board did not hire the Plaintiff for the position that she sought. Finally, the Board hired a white person instead.

In response to the presumption of discrimination raised by the Plaintiff's *prima facie* case, the Board asserts that the Plaintiff was not hired because she was substantially less qualified than Uppal. Specifically, the Board argues that in addition to her undergraduate degree, Uppal has an advanced degree, a Master's in Business Administration from the University of Michigan, which particularly qualified her for the position. The Plaintiff does not possess any advanced degree.

Because the Board met its burden of producing a legitimate, non-discriminatory reason for its decision, the burden shifts back to the Plaintiff to demonstrate that this reason is mere pretext. *Gaalla*, 460 F. App'x at 480; *Meinecke*, 66 F.3d at 83. The Plaintiff's pretext arguments fall into two categories. First, the Plaintiff alleges that Uppal was not qualified for the position. According to the Plaintiff, the Board ignored her superior qualifications in order to place a less qualified white person in the position. Second, the Plaintiff alleges that the Board pre-selected a white person for the job and manipulated the hiring process to make sure that its pre-selected white candidate was ultimately hired.

*Qualifications*

To establish pretext through qualifications, the Plaintiff must show that she was "clearly better qualified." *Martinez v. Texas Workforce Comm'n-Civil Rights Div.*, 775 F.3d 685, 687 (5th Cir. 2014) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010)). "[A]n employee's 'better education, work experience, and longer tenure with the company do not establish that [s]he is clearly better qualified.'" *Martinez*, 775 F.3d at 688 (citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002)). "The bar is high because '[u]nless the qualifications are so widely disparate that no reasonable employer would have made the same decision . . . differences in qualification are generally not probative evidence of discrimination.'" *Murchison v. Cleco Corp.*, 544 F. App'x. 556, 560 (5th Cir. 2013) (per curiam) (quoting *Moss*, 610 F.3d at 923). "[E]mployers are generally free to weigh the qualifications of prospective employees, so long as they are not motivated by race." *Martinez*, 775 F.3d at 688.

The Plaintiff argues that Uppal was not qualified because she did not have any experience working in government, and that the Plaintiff was clearly better qualified because she had extensive governmental experience. The Board acknowledges that the Plaintiff was qualified for the position, and the Board did interview her. The Board also acknowledges that Uppal did not have prior government experience before she took on the temporary grant writing position. The Board argues that it considered Uppal's educational background, a Master's Degree in Business Administration, and her extensive experience in "management level positions," "management, financing, and projecting with companies on a global scale" superior qualifications for the position.

Essentially, the Board asserts that it placed emphasis on education and private sector experience over governmental experience. Although the Plaintiff clearly disagrees with the

Board's assessment, she has not brought forth any evidence to undermine Uppal's qualifications, and her subjective belief that she is more qualified is insufficient to create a question of fact on this issue. *See Patterson v. Houston Indep. Sch. Dist.*, 570 F. App'x 367, 370 (5th Cir. 2014) (citing *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). In addition, the Plaintiff has not brought forth any evidence of discriminatory intent or purpose that could augment or support her subjective belief. *See Coleman*, 113 F.3d at 533 (citing *Village of Arlington Heights*, 429 U.S. at 265, 97 S. Ct. 555).

The Plaintiff's arguments and evidence fall far short of establishing that "no reasonable employer would have made the same decision." *Murchison*, 544 F. App'x at 560 (quoting *Moss*, 610 F.3d at 923); *see also Martinez*, 775 F.3d at 688. Compared side by side, both Uppal and the Plaintiff have substantial qualifications for the position, and the Plaintiff has failed to raise any question of fact on the "clearly better qualified" issue. As noted above, superior qualifications in just one area or emphasis of a particular type of experience over another do not rise to the level of "clearly better qualified." *Martinez*, 775 F.3d at 688 (citing *Price*, 283 F.3d at 723).

The Plaintiff also argues that Uppal failed to meet the statutory qualifications for County Administrators, although she fails to cite any facts or evidence to support this allegation. In essence, this is an argument that Uppal was *per se* not qualified for the position. The state statute that outlines qualifications for County Administrators states in relevant part: "The person employed as county administrator shall hold at least a bachelor's degree from an accredited college or university and shall have knowledgeable experience in any of the following fields: work projection, budget planning, accounting, purchasing, cost control, personnel management and road construction procedures." MISS. CODE. ANN. § 19-4-1. It appears from undisputed facts in the

record that Uppal met this statutory qualification, and the Plaintiff has not brought forth any competent summary judgment evidence to the contrary.

*Preselection*

Next, the Plaintiff asserts that the Board "pre-selected" Uppal because she is white, and that the preselection is evidence of pretext. The Plaintiff argues that the Board manipulated the application and hiring process to make sure that a white person was in the position. As this Court noted previously, "pre-selection, in and of itself, does not establish pretext *unless the preselection was motivated by discriminatory animus*." *See Rowe v. Jewell*, 88 F. Supp. 3d 647, 665 (E.D. La. 2015) (citing *Walsdorf v. Bd. of Comm'rs for the E. Jefferson Levee Dist.*, 857 F.2d 1047, 1051 (5th Cir. 1988); *Hiner v. McHugh*, 546 F. App'x 401, 407 (5th Cir. 2013)).

After Uppal presented herself to the Board as an available "volunteer," the Board put Uppal into the temporary grant-writing position even though Uppal only had experience preparing grant proposals and no experience writing grants. Before they advertised for the Administrator position, the County paid for Uppal to attend grant-writing training, and paid her retroactively for her work after she was able to reopen several grants, and restore funding that had expired. The Board also altered the job description for the Assistant County Administrator position to include grant writing. The Plaintiff argues that these actions by the Board are evidence of pretext.

The Plaintiff's argument regarding the amendment of the job description is somewhat illogical because the Plaintiff had grant writing experience. It follows that adding the grant writing qualification to the job description was beneficial to the Plaintiff as well. In any event, the Plaintiff has wholly failed to bring forth any evidence of discriminatory intent or animus. The slight evidence of preselection, without more, is insufficient to establish pretext. *See Rowe*, 88 F. Supp. 3d at 665; *Walsdorf*, 857 F.2d at 1051; *Hiner*, 546 F. App'x at 407. In short, the Plaintiff failed to

produce any evidence of pretext or discriminatory intent as required to substantiate her claim. *See Arlington Heights*, 429 U.S. at 265, 97 S. Ct. 555; *Coleman*, 113 F.3d at 533.

In conclusion, the Court notes that in some, perhaps rare, situations "exemplary qualifications in tandem with the other evidence," can support an inference that an employer's proffered hiring rationale is pretextual. *Stennett v. Tupelo Pub. Sch. Dist.*, 619 F. App'x 310, 319 (5th Cir. 2015) (citing *Pratt v. City of Hous.,* 247 F.3d 601, 607 (5th Cir. 2001)). With this in mind, the Court examined the totality of the circumstances here, the Plaintiff's *prima facie* case, her arguments regarding qualifications, and her arguments regarding preselection, and finds that even viewing all of the circumstances together the Plaintiff cannot carry her burden on pretext. In the end, the Plaintiff must produce or point to evidence that the Board's legitimate proffered reason for not hiring her is merely a pretext for *discrimination*. *Chhim*, 836 F.3d at 470. Unlike the Plaintiff in *Stennett*, who was not hired for seven different positions despite exemplary qualifications and a strong *prima facie* case, the Plaintiff here has not brought forth any additional evidence of pretext or racial discrimination for the Court to consider "in tandem" with her *prima facie* case. *Stennett*, 619 F. App'x at 319; s*ee also Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 237 (5th Cir. 2016) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)) ("At the last step, this intermediate burden now merges with the ultimate burden of proving that the employee has been the victim of intentional discrimination.") (alterations and internal quotations omitted); *Reeves*, 530 U.S. at 153, 120 S. Ct. 2097 ("The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the [employee] was the victim of intentional discrimination.")).

Because the Plaintiff failed to make a showing sufficient to establish the existence of several elements essential to her case, summary judgment is granted in the Board's favor on the

Plaintiff's Title VII and Equal Protection claims for discrimination based on race. *Celotex*, 477 U.S. at 322, 106 S. Ct. 2548.

## *Due Process*

Although the Plaintiff alleged a claim for a due process violation based on the Mississippi Constitution in her Amended Complaint, the Plaintiff's theory for recovery on this claim is unclear. The Plaintiff does not allege any process that she was due and did not receive, nor does she allege any constitutionally protected interest that could give rise to due process concerns. The Plaintiff also failed to offer any summary judgment argument or evidence on this claim. For these reasons, the Court finds that the Plaintiff has abandoned her due process claim, and summary judgment is granted in the Board's favor on this claim.

## *Conclusion*

To avoid summary judgment, the nonmoving party must supply "evidence on which the jury could reasonably find for the plaintiff." *Chen v. Ochsner Clinic Found.*, 630 F. App'x 218, 222–23 (5th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Mere "conclusory allegations, speculation, [or] unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Id.* (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)).

Although the Plaintiff established a *prima facie* case of discrimination, she failed to bring forth any evidence that the Board's proffered reason for not hiring her was pretextual, and failed to bring forth any evidence of discriminatory motive or intent. *See Gaalla*, 460 F. App'x at 479; *Priester*, 354 F.3d at 424; *Taylor*, 257 F.3d at 473.

For these reasons, and for all the reasons fully discussed above, the Board's Motion for Summary Judgment [45] is GRANTED, and all of the Plaintiff's remaining claims are DISMISSED with prejudice.

This CASE is CLOSED.

SO ORDERED, on this the 23rd day of January, 2018.

                                            /s/ Sharion Aycock
                                          UNITED STATES DISTRICT JUDGE